**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| NAVAJO NATION, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 2:20-cv-602-MV-GJF |
| ) | |
| MICHAEL REGAN, *et al*., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF NAVAJO NATION'S PARTIAL OPPOSITION TO ECF NO. 32,
DEFENDANTS' OPPOSED MOTION FOR VOLUNTARY REMAND
OF THE NWPR WITHOUT VACATUR**

Defendants Michael Regan, United States Environmental Protection Agency, Jaime Pinkham, and the United States Army Corps of Engineers (collectively, the Agencies) ask this Court to remand the 2020 Navigable Waters Protection Rule (NWPR or Rule), 85 Fed. Reg. 22,250 (Apr. 21, 2020), "in lieu of filing a response to Plaintiff Navajo Nation's motion for summary judgment or a cross-motion for summary judgment." Defs.' Mot. at 2, ECF No. 32.[1] The Agencies explain that they have identified "substantial and legitimate concerns" with the Rule, *id*. at 9, "many of which have been raised by [the] Navajo Nation," *id*. at 15, and therefore have decided to commence a new rulemaking to revise or replace the Rule, *id*. at 2. Contrary to Defendants' claim that Plaintiff "Navajo Nation opposes remand," *id.* at 2, the Navajo Nation in fact supports

---

[1] The first time a document in the docket is cited, the ECF number is also referenced. All page numbers refer to the original document pagination rather than the ECF stamped page number.

the Agencies' request for remand of the Rule but requests that the Court also vacate the Rule to prevent it from continuing to harm the Navajo Nation during the years it will take for the Agencies to finalize a replacement. By vacating the Rule, the Court would allow a return to the status quo ante, that is, the law defining "waters of the United States" (WOTUS) prior to both the NWPR and the 2015 Clean Water Rule, 80 Fed. Reg. 37,054 (June 29, 2015), as explained below.[2]

## INTRODUCTION

Congress stated unequivocally that the purpose of the Clean Water Act (CWA) is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The CWA's primary method of achieving this purpose is by regulating discharges of pollutants into "waters of the United States." 33 U.S.C. §§ 1311(a), 1342, 1344, 1362(7). CWA regulation is essential to protecting the waters and public health of the country, and particularly of Indian tribes, such as the Navajo Nation, which rely on the CWA's federal permitting programs. *See* Br. in Supp. of Mot. for Summ. J. at 21, ECF No. 20-1. These protections are not required for pollutant discharges into waters that are not WOTUS (known as non-jurisdictional waters).

The NWPR, which took effect on June 22, 2020, greatly narrowed the definition of WOTUS compared to prior definitions. Indeed, the Rule re-defined WOTUS in a manner so restrictive that it is unprecedented in the almost 50-year history of the CWA. Of note, the Rule categorically excludes all ephemeral streams—waters that flow in response to precipitation—and

---

[2] In its Complaint and its Motion for Summary Judgment, the Navajo Nation referred to the NWPR as the 2020 Replacement Rule. To avoid confusion, the Navajo Nation refers to it here in the same way as Defendants, that is, as the NWPR (or simply Rule).

an untold number of intermittent streams from the definition of WOTUS and thus from protection under the CWA. These waters predominate in the arid Southwest, and their exclusion has resulted in the Navajo Nation and other Southwestern tribes and states being disproportionately harmed by the Rule.

The Navajo Nation immediately filed suit challenging the Rule. Complaint, ECF No. 1.[3] The Navajo Nation did so to protect the environment and public health of its citizens from the harms caused by the Rule. The Navajo Nation's brief in support of its motion for summary judgment explained ongoing harms the Rule was causing that could be redressed by a decision vacating the Rule. Brief in Supp. of Mot. for Summ. J. at 21-22. The Navajo Nation detailed the numerous ways the Rule violates the CWA and the Administrative Procedure Act (APA), *id.* at 21-22, 41-59, and asked this Court to declare the Rule unlawful and set it aside, *id.* at 3, 59.

To conserve the Court's and the parties' resources, the Navajo Nation has waited patiently for the Agencies, under new leadership, to review the Rule and respond to the Navajo Nation's brief supporting its motion for summary judgment, and has agreed to three separate requests from the Agencies to extend the briefing schedule in this case. ECF Nos. 26-31. The Agencies have now decided to commence a new rulemaking to revise or replace the Rule, Defs.' Mot. at 2, which, as noted above, the Navajo Nation supports. The Agencies have not disputed the Navajo Nation's claims regarding the NWPR and indeed have themselves recognized some of the significant errors

---

[3] The Navajo Nation also challenged the 2019 Repeal Rule, 84 Fed. Reg. 56,626 (Oct. 22, 2019). The Navajo Nation has agreed to the Agencies' request to stay the Navajo Nation's 2019 Repeal Rule claims until resolution of the Agencies' motion regarding the NWPR. Therefore, this Response addresses only the Agencies' motion to remand the NWPR without vacatur and the Navajo Nation's summary judgment claims regarding the NWPR.

that the Navajo Nation raised. *See* Defs.' Mot. at 15 ("The Agencies have identified numerous concerns with the NWPR, many of which have been raised by Navajo Nation in this case"); *see, e.g.*, Decl. of Radhika Fox ¶¶ 12-14, ECF No. 32-1.[4] The Navajo Nation agrees with the Agencies that the NWPR must be revised or replaced. Therefore, the Navajo Nation does not oppose the Agencies' request to remand the Rule, nor much of the supporting discussion in the Agencies' motion.

But the Agencies have not gone far enough, because despite acknowledging that the Rule must be replaced, *see* U.S. EPA, Intention to Revise the Definition of "Waters of the United States," https://www.epa.gov/wotus/intention-revise-definition-waters-united-states (last visited June 24, 2021) (EPA Intention Announcement), they have not requested that this Court vacate the unlawful Rule, *see* Defs.' Mot. at 11. The Agencies' motion would have the Court leave the Rule in place for an indeterminate amount of time, awaiting a rulemaking that has not even been scheduled and is likely to span a number of years, even though the Agencies themselves state the Rule is currently causing "significant, ongoing, and irreversible environmental damage." Email from Karen Gude to Tribal Partners (June 9, 2021), Decl. of Ronnie Ben (July 1, 2021) Ex. 1 (Gude Email). It is this part of the Agencies' motion—remand *without requesting vacatur*—that the Navajo Nation opposes.

---

[4] The Agencies filed two substantially identical declarations in support of their motion, one signed by Radhika Fox, now the Assistant Administrator for the Office of Water in EPA, and the other by Jaime Pinkham, Acting Assistant Secretary of the United States Army for Civil Works. To avoid burdening the Court with extraneous citations, the Navajo Nation cites only to the Fox Declaration, but identical language can be found in the same paragraph numbers in the Pinkham Declaration.

The NWPR has serious deficiencies which the Agencies will not be able to defend on remand. Leaving the Rule in place for an undetermined number of years would result in "significant, actual environmental harms" to the Navajo Nation, Fox Decl. ¶ 17, which, moreover, are likely to be "cascading and cumulative," *id.* ¶ 20. The Navajo Nation therefore requests that this Court exercise its discretion to remand *and vacate* the NWPR. The Navajo Nation alternatively requests that the Court decide the merits of Plaintiff's Motion for Summary Judgment on the NWPR, hold the NWPR to be unlawful, and vacate the Rule based on any of the numerous reasons explained in the Navajo Nation's brief in support of that motion, which the Agencies either do not dispute or effectively concede in their motion for remand.

## STANDARD OF REVIEW

The APA states that courts shall "hold unlawful and *set aside* agency action" found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706 (emphasis added). Thus, it is standard practice for a court reviewing a challenge to agency action to vacate the action if it is found unlawful. *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 300 (2003); *WildEarth Guardians v. U.S. Bureau of Land Mgmt.*, 870 F.3d 1222, 1239 (10th Cir. 2017); *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014) ("vacatur is the normal remedy" for an APA violation).

Courts also have the discretion to vacate an agency action without determining whether the action is unlawful. *Nat'l Ski Areas Ass'n, Inc. v. U.S. Forest Serv.*, 910 F. Supp. 2d 1269, 1285-86 (D. Colo. 2012); *Ctr. For Native Ecosystems v. Salazar*, 795 F. Supp. 2d 1236, 1240-42 (D. Colo. 2011); *Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Salazar*, No. 07-CV-00876 JEC/WPL, 2009 WL 8691098, at *3 (D.N.M. May 4, 2009) (citing *Nat. Res. Def. Council v. Dep't*

*of Interior*, 275 F. Supp. 2d 1136, 1143 (C.D. Cal. 2002)); *cf. Ariz. Pub. Serv. Co. v. EPA*, 562 F.3d 1116, 1118, 1122, 1131 (10th Cir. 2009) (granting EPA's unopposed motion to voluntarily remand and vacate provision in federal plan without court determination on provision's lawfulness). When granting requests for voluntary remand, courts have decided whether to also vacate the agency action being remanded by considering the factors described in *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Commission*, 988 F.2d 146, 150-51 (D.C. Cir. 1993). *See, e.g.*, *Ctr. For Native Ecosystems*, 795 F. Supp. 2d at 1242; *Coal. of Ariz./N.M. Cntys.*, 2009 WL 8691098, at *3. Under the *Allied-Signal* factors, courts first examine "'the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly)'"; a remand without vacatur is proper in cases where a rule was merely "inadequately supported" and "there is at least a serious possibility that the [agency] will be able to substantiate its decision on remand." *Allied-Signal*, 988 F.2d at 150-51 (quoting *Int'l Union, United Mine Workers of Am. v. Fed. Mine Safety & Health Admin.*, 920 F.2d 960, 967 (D.C. Cir. 1990)); *see Sierra Club v. U.S. Army Corps of Eng'rs*, 909 F.3d 635, 655 (4th Cir. 2018). Second, courts examine the "'disruptive consequences of an interim change that may itself be changed.'" *Allied-Signal*, 988 F.2d at 150-151 (citation omitted). More specific factors courts consider include: (1) the purpose of the underlying statute under which the agency was acting; (2) the consequences of invalidating the agency action; (3) potential prejudice to those who will be affected by maintaining the status quo; and (4) the magnitude of the alleged agency error and how extensive and substantive it was. *Coal. of Ariz./N.M. Cntys.*, 2009 WL 8691098, at *3.

## ARGUMENT

### I.   All *Allied-Signal* Factors Support Vacating the 2020 NWPR

#### A.  The Rule's Deficiencies Are Serious

The Navajo Nation explains in its brief supporting its motion for summary judgment the numerous ways the NWPR violated the CWA and the APA. The Court need not decide the Navajo Nation's summary judgment motion, however, in order to recognize the serious deficiencies in the Rule: their seriousness is documented in the Agencies' own motion, declarations, and other statements.

The Agencies state that they have identified "substantial and legitimate concerns" with the NWPR. Defs.' Mot. at 9; *accord* Fox Decl. ¶¶ 8 ("substantial concerns about the lawfulness of aspects of the NWPR and the harmful effects of the NWPR on the nation's waters"), 10 ("substantial concerns with the NWPR"). The Agencies' declarations explain that "there must be some consideration of the effects of a revised definition of 'waters of the United States' on the integrity of the nation's waters," Fox Decl. ¶ 14, preservation of which is the CWA's sole objective, 33 U.S.C. § 1251(a). Indeed, they acknowledge that "consideration of the effects of a revised definition of 'waters of the United States' on the integrity of the nation's waters is a critical element in assuring consistency with the statutory objective of the CWA." Fox Decl. ¶ 13 (citing *Cnty. of Maui, Haw. v. Haw. Wildlife Fund*, 140 S. Ct. 1462, 1468-69 (2020)); *see also* Defs.' Mot. at 9 (voicing substantial concerns "including whether the NWPR adequately considered the CWA's statutory objective in determining the scope of 'waters of the United States' and, as a result, whether the process adequately considered the effects of the NWPR on the integrity of the nation's waters").

The Agencies go even further and essentially agree that consideration of these effects was

lacking when they promulgated the Rule:

> [S]ignificant concerns exist about the sufficiency of the agencies' consideration of the effects of the NWPR on the chemical, physical, and biological integrity of the nation's waters when determining the limits of the specific definitional language "waters of the United States" in the NWPR. For example, the agencies are concerned that the NWPR did not look closely enough at the effect ephemeral waters have on traditional navigable waters when the agencies decided to categorically exclude all ephemeral waters.

Fox Decl. ¶ 14. Failure to implement the purpose of the underlying statute is evidence of a serious

deficiency. *See Coal. of Ariz./N.M. Cntys.*, 2009 WL 8691098, at *3.

The Agencies also find a serious deficiency in the Rule's consideration of science and the

administrative record:

> Certain statements in the NWPR preamble call into significant question whether the agencies' consideration of science and water quality impacts in developing the rule was consistent with these goals. For example, the agencies explicitly and definitively stated in numerous places in the NWPR administrative record that they did not rely on agency documents in the record that provided some limited assessment of the effects of the rule on water quality in determining the scope of the definition of "waters of the United States."

Fox Decl. ¶ 12.

Given these fundamental flaws in the Rule, and the fact that they extend to both the

substance of the Rule and the way it was promulgated, there is no "serious possibility" that the

Agencies will even attempt, let alone be able, to substantiate the Rule on remand, and particularly

its categorical exclusion of ephemeral waters. *See Allied-Signal*, 988 F.2d at 151. There is no

possibility that the errors will turn out to be inconsequential, *see id.*, because the acknowledged

"critical" deficiencies in the Agencies' decision-making, Fox Decl. ¶ 13, make it highly unlikely

that the Agencies would adopt the same rule on remand, *Pollinator Stewardship Council v. U.S.*

*EPA*, 806 F.3d 520, 532 (9th Cir. 2015). How could they, when they are already "seeing destructive impacts to critical water bodies under the 2020 rule" and the EPA Administrator himself stated that "this rule [the NWPR] is leading to significant environmental degradation." EPA, Army Announce Intent to Revise Definition of WOTUS (June 9, 2021), https://www.epa.gov/newsreleases/epa-army-announce-intent-revise-definition-wotus (EPA Press Release).

In other words, the Agencies' own statements confirm there is no "doubt whether [they] chose correctly," *Allied-Signal*, 988 F.2d at 150, because they have already "determined that the rule *must be replaced*." EPA Intention Announcement (emphasis added). Vacatur is further called for here because the Agencies' reasoning behind the rule was "'flimsy,'" and the Agencies' concession that they will replace the Rule "'is but another indication that [the Rule] is a hopeless cause.'" *N. N.M. Stockman's Ass'n v. U.S. Fish & Wildlife Serv.*, 494 F. Supp. 3d 850, 1032 (D.N.M. 2020) (quoting *Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1053 (D.C. Cir. 2002)), *appeal docketed*, No. 21-2019 (Mar. 2, 2021).

### B. Vacating the NWPR Would Not Cause Disruptive Consequences

Remand *without* vacatur is appropriate only when the "disruptive consequences of an interim change that may itself be changed" justify leaving the rule in place while the agency further explains or substantiates the rule on remand. *Allied-Signal*, 988 F.2d at 150-51. The D.C. Circuit has explained that under the *Allied-Signal* test, vacatur is disruptive "if it set[s] back achievement of the environmental protection required" by statute. *Nat. Res. Def. Council v. EPA*, 489 F.3d 1364, 1374 (D.C. Cir. 2007).

Vacatur here would not have "disruptive consequences" because it would simply reinstate the long-term status quo, *i.e.*, the regulation defining WOTUS that predated the Rule's effective date. *See Action on Smoking & Health v. Civ. Aeronautics Bd.*, 713 F.2d 795, 797 (D.C. Cir. 1983) (vacatur "ha[s] the effect of reinstating the rules previously in force"). A "return to the status quo causes little or no disruption," *Burke v. Coggins*, No. 1:20-CV-00667 (TNM), 2021 WL 638796, at *10 (D.D.C. Feb. 18, 2021), especially here where the regulatory regime that predated the Rule has applied for most of the past three decades. The Sixth Circuit described it as "familiar, if imperfect." *In re EPA*, 803 F.3d 804, 808 (6th Cir. 2015), *vacated sub nom. In re U.S. Dep't of Def.*, 713 F. App'x 489 (6th Cir. 2018). The Agencies explained in the 2019 Repeal Rule that this regime was the "longstanding regulatory framework that is familiar to and well-understood by the agencies, States, Tribes, local governments, regulated entities, and the public." Definition of "Waters of the United States"—Recodification of Pre-Existing Rules, 84 Fed. Reg. 56,626, 56,661 (Oct. 22, 2019).[5] Moreover, the Agencies have stated their "intent to initiate a new rulemaking process that restores the protections in place prior to the 2015 WOTUS implementation," EPA Press Release, which is the very result that vacatur would have here, making it even clearer that a return to the status quo will cause little or no disruption.

Here, in contrast, allowing the Rule to remain in place would cause the most disruption, as it would "set back achievement of the environmental protection required by the [CWA]," *Nat. Res. Def. Council*, 489 F.3d at 1374, which is the sole purpose of the statute, by jeopardizing the

---

[5] The long-term status quo would be reinstated because the Agencies repealed the 2015 Clean Water Rule via the 2019 Repeal Rule and the Navajo Nation's challenge to the 2019 Repeal Rule has been stayed (*see* n.3). After the Court decides the Agencies' motion, the Navajo Nation and the Agencies will propose whether and how to proceed with the Navajo Nation's claims and the appropriate remedy regarding the 2019 Repeal Rule.

integrity of the nation's waters. The Navajo Nation explained the disruptions caused by the NWPR

brief in support of summary judgment; leaving the Rule in place while the Agencies consider a

new rule will exacerbate those disruptions. For example, the Navajo Nation, all other tribes, and

some states do not have CWA permitting programs but instead rely on the Agencies to issue

discharge permits that protect their waters. Br. in Supp. of Mot. for Summ. J. at 19; Decl. of Ronnie

Ben (Jan. 14, 2021) ¶¶ 15-17, 21, 37, ECF 20-2. For many years, those permits were issued by the

Agencies, working with the Navajo Nation, based on an interpretation of WOTUS that used the

scientifically based significant nexus standard. Ben Decl. (Jan. 14, 2021) ¶ 38. The NWPR upends

those years of reliance on scientific knowledge and historical practice and instead creates a new,

narrow, and unprecedented definition that has no basis in hydrological science. *Id.* Not

surprisingly, application of the NWPR has already resulted in the exclusion of Navajo Nation

waters from CWA protection, including federal permitting requirements, and consequently has

allowed discharges into Navajo Nation and neighboring waters without review or control. *Id.*

¶¶ 24-26.

In the year since the NWPR went into effect, there have been at least two projects on the

Navajo Nation that previously would have required CWA Section 404 permits from the Army

Corps, which in turn would have required CWA Section 401 Certifications from the Navajo

Nation. Instead, these projects were allowed to proceed without any review due to the NWPR's

exclusion of ephemeral streams. Decl. of Ronnie Ben (July 1, 2021) ¶ 7. Additionally, of the 134

jurisdictional determinations conducted during the past year (since June 22, 2020) in counties

including or adjacent to Navajo Nation lands,[6] the Corps has found none of the waters in question
to be WOTUS. Ben Decl. (July 1, 2021) ¶ 8.[7] As a consequence, the Navajo Nation has had no
opportunity to object under CWA Section 401(a)(2) to discharges into these neighboring waters
that may cause violations of Navajo Nation water quality standards downstream. 33 U.S.C.
§ 1341(a)(2). Ben Decl. (July 1, 2021) ¶ 9. As acknowledged by the Agencies, these discharges
could have "cascading and cumulative downstream effects," Fox Decl. ¶ 20. This disruption will
continue until the Rule is vacated or replaced.[8]

The Agencies have not given any indication that they would be seriously harmed or
disrupted if the Rule were vacated. *See ASSE Int'l, Inc. v. Kerry*, 182 F. Supp. 3d 1059, 1065
(C.D. Cal. 2016).[9] Rather than demonstrating that vacating the Rule would cause disruptive

---

[6] Those counties are Apache, Coconino, and Navajo Counties in Arizona; Bernalillo, Cibola,
McKinley, Sandoval, San Juan, and Valencia Counties in New Mexico; and San Juan County,
Utah. Ben Decl. (July 1, 2021) ¶ 8.

[7] In comparison, in the almost five years prior to the NWPR taking effect (from August 2015 to
June 2020), the Agencies' data show that only 73 jurisdictional determinations were made and of
those 22 found the water to be WOTUS. Ben Decl. (July 1, 2021) ¶ 8. It appears that the pace of
jurisdictional determinations requested and performed has picked up significantly in the year since
the NWPR went into effect, with the deregulatory results described above.

[8] The Agencies briefly assert that the Navajo Nation would not be prejudiced by remand because
they intend to consider the Navajo Nation's claims on remand and the Navajo Nation will have the
opportunity to comment on any new proposed rule. Defs.' Mot. at 13-14. The relevant issue before
the Court, however, is whether the Navajo Nation will be prejudiced by remand *without vacatur*,
which would leave the NWPR in place for multiple years during remand. The Navajo Nation
plainly would be prejudiced by this action, which the Agencies do not dispute.

[9] The lack of harm or disruption from vacatur here is in sharp contrast to the severe disruption that
courts have found warrants denying a request for vacatur. For example, in *California Communities
Against Toxics v. U.S. EPA*, 688 F.3d 989 (9th Cir. 2012), the court remanded but did not vacate
a rule approving a Clean Air Act implementation plan after finding that vacatur would: 1) delay
the operation of a much-needed power plant, which could result in blackouts and pollution from
the use of diesel generators (contrary to the purpose of the underlying statute); and 2) disrupt a

consequences, the Agencies, agreeing with the Navajo Nation, have asserted the opposite: it is the unlawful Rule that has been causing disruptive and harmful consequences, and leaving it in place during a new rulemaking will continue to do the same.

According to the Agencies, the NWPR "is causing significant, ongoing, and irreversible environmental damage." Gude Email. The Rule has removed CWA protections from a vast portion of the country's wetlands and streams, *see* Fox Decl. ¶ 15, allowing these waters to be polluted and destroyed. The Agencies' own analysis found that, "[o]f the 40,211 individual aquatic resources or water features for which the Corps made approved jurisdictional determinations under the NWPR between June 22, 2020 and April 15, 2021, approximately 76% were found to be non-jurisdictional." *Id.* And the Agencies "are aware of 333 projects that would have required Section 404 permitting prior to the NWPR, but no longer do." *Id.* Further, the Agencies explain this analysis is likely incomplete "to the extent that project proponents are not seeking any determinations for waters that the NWPR now excludes, such as ephemeral streams." *Id.*

What is more, the Agencies agree that the impacts have been particularly significant in arid states, where the Navajo Nation is located: "In New Mexico and Arizona, for example, of over 1,500 streams assessed under the NWPR, *nearly every one* has been found to be a non-jurisdictional ephemeral resource, which is *very different* from the status of the streams as assessed under both the Clean Water Rule and the pre-2015 regulatory regime." Fox Decl. ¶ 16 (emphasis added). The Agencies also agree that "Projects are proceeding in newly non-jurisdictional waters in states and tribal lands where regulation of waters beyond those covered by the CWA are not

---

billion-dollar venture employing 350 workers, which would be "economically disastrous." *Id.* at 993-94.

authorized, and, based on available information, will therefore result in discharges without any regulation or mitigation from federal, state, or tribal agencies." *Id.* ¶ 18.

As the Agencies explain, the NWPR, if left in place, could have "cascading and cumulative downstream effects . . . including but not limited to effects on water supplies, water quality, flooding, drought, erosion, and habitat integrity." Fox Decl. ¶ 20. Such pollution and destruction cannot easily be undone. *See Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987) (explaining that "[e]nvironmental injury, by its nature . . . is often permanent or at least of long duration, *i.e.*, irreparable").

Moreover, the unlawful Rule is likely to remain in effect for a significant period. *Cf. Endangered Species Comm. of Bldg. Indus. Ass'n of S. Cal. v. Babbitt*, 852 F. Supp. 32, 42 (D.D.C. 1994), *as amended on reconsideration* (June 16, 1994) (allowing agency's species listing to remain in place on remand based in part on short period of time for agency reevaluation that would delay construction activities by only 100 days). The Agencies have not provided any timeline for even proposing a new rule, let alone finalizing one. All signs point to a proposed rule being over a year away and a final rule being several more years away.[10]

---

[10] In their Spring 2021 Agenda, published June 11, 2021, the Agencies list the WOTUS rulemaking under the "Long-Term Actions" stage of rulemaking, with the notice of proposed rulemaking scheduled as "undetermined." Office of Info. & Regul. Affairs, Spring 2021 Unified Agenda of Federal Regulatory and Deregulatory Actions, Revised Definition of "Waters of the United States," https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202104&RIN=2040-AG13 (last visited June 23, 2021). "Long-Term Actions" are those "for which the agency does not expect to have a regulatory action within the 12 months after publication of this edition of the Unified Agenda." Office of Info. & Regul. Affairs, Spring 2021 Unified Agenda of Federal Regulatory and Deregulatory Actions, https://www.reginfo.gov/public/do/eAgendaHistory?operation=OPERATION_GET_PUBLICATION&showStage=longterm&currentPubId=202104 (last visited June 23, 2021). Even rules listed in the "Proposed Rule Stage" or "Prerule Stage" are expected to take several years to finalize. *See* Office of Info. & Regul. Affairs, Spring 2021 Unified Agenda of Federal Regulatory and

The Navajo Nation appreciates the Agencies' stated intent to utilize "a robust engagement process" to develop a new rule, EPA Press Release, which the Navajo Nation believes is essential to correct some of the errors of the NWPR. But this process will likely further extend the time before a new rule is proposed and finalized. The rulemakings for the 2015 Clean Water Rule, 2019 Repeal Rule, and 2020 NWPR took four years, two-and-a-half years, and three years, respectively. *See* Clean Water Rule, 80 Fed. Reg. at 37,102 (rulemaking process started in 2011); Repeal Rule, 85 Fed. Reg. at 56,626; NWPR, 85 Fed. Reg. at 22,259-60 (agencies announced an intent to rescind or revise the Clean Water Rule in March 2017). Assuming a new rulemaking takes a similar amount of time, if the Rule is allowed to remain in effect it will continue to disrupt the CWA's primary objective and harm the Navajo Nation for years.

The Rule is causing disruptive consequences to the nation as a whole and harming the Navajo Nation in particular, in a manner that is in direct contravention of the overriding purpose of the CWA. Vacating the Rule and returning to the long-time status quo would not be disruptive. The second criterion in *Allied-Signal* therefore supports vacating the NWPR.

Accordingly, based on both *Allied-Signal* factors, the Court should grant the Agencies' motion to remand and also vacate the NWPR.

---

Deregulatory Actions, Clean Water Act Section 401: Water Quality Certification, https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202104&RIN=2040-AG12 (last visited June 23, 2021) (in "Proposed Rule Stage," scheduled to release notice of proposed rulemaking February 2022); Office of Info. & Regul. Affairs, Spring 2021 Unified Agenda of Federal Regulatory and Deregulatory Actions, Water Quality Standards Regulatory Revisions to Protect Tribal Reserved Rights, https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202104&RIN=2040-AG17 (last visited June 23, 2021) (in "Proposed Rule Stage," scheduled to release notice of proposed rulemaking April 2022 and final action February 2023).

**II.     Alternatively, the Court Should Hold the NWPR Unlawful, Thus Triggering the Standard Remedy of Vacatur of the Rule**

In its Motion for Summary Judgment, the Navajo Nation explains the numerous reasons why the NWPR was arbitrary, capricious, and not in accordance with law.[11] First, the Navajo Nation explains that the Rule violated the CWA and Supreme Court precedent by adopting a definition that was unreasonable and that was rejected by a majority of Supreme Court Justices. Br. in Supp. of Mot. for Summ. J. at 41-45. Second, the Navajo Nation explains that the NWPR was arbitrary and capricious because: 1) the Agencies failed to provide a reasoned explanation for their departure from past practice and the scientific record, including the Connectivity Report that documented the importance of ephemeral streams, *id.* at 45-52; 2) the Agencies failed to consider important aspects of the problem, including the Rule's impact on the CWA's objective to restore and maintain the chemical, physical, and biological integrity of the Nation's waters and the Rule's impact on tribal waters and treaty rights, *id.* at 52-58; 3) the Agencies failed to consider significant comments from the Navajo Nation and other tribes regarding tribal water protections, *id.* at 52-58; and 4) the Agencies deprived the public of a meaningful opportunity to comment, *id.* at 58-59.

For example, the Navajo Nation explained that the 2020 Rule categorically excluded ephemeral streams from WOTUS even though many such waters were protected under all prior definitions of WOTUS and have been shown to exert a strong influence on the integrity of downstream waters. *Id.* at 46. The Navajo Nation argued that the NWPR failed to acknowledge,

---

[11] Although captioned as a Motion for Summary Judgment, the Navajo Nation's January 15, 2021 motion and brief in support are equivalent to an appellate brief, seeking review of final agency action based on the record. *See* Mot. for Summ. J. at 1 n.1 (citing *N.M. Health Connections v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1138, 1155 (10th Cir. 2019)).

let alone substantively engage with, the basis for the Agencies' past practice, including the extensive scientific record regarding the importance of ephemeral streams to downstream water quality. *Id.* at 45-49. Additionally, the Navajo Nation explained that the Agencies failed to analyze the impact on water quality of excluding ephemeral streams from WOTUS. *Id.* at 52-54.

In the Agencies' motion, which they filed in lieu of a response, Defs.' Mot. at 2, the Agencies do not dispute any of the Navajo Nation's claims. The Agencies even concede that the NWPR must be replaced for some of the same reasons presented in the Navajo Nation's brief. As discussed above, the Agencies agree with the Navajo Nation that "there must be some consideration of the effects of a revised definition of 'waters of the United States' on the integrity of the nation's waters," Fox Decl. ¶ 14, calling it a "critical element" of the Rule, *id.* ¶ 13, and they state their concern about the sufficiency of this consideration in the NWPR. Defs.' Mot. at 9 (noting substantial concerns "including whether the NWPR adequately considered the CWA's statutory objective in determining the scope of 'waters of the United States' and, as a result, whether the process adequately considered the effects of the NWPR on the integrity of the nation's waters"). The Agencies admit that they "explicitly and definitively stated in numerous places in the NWPR administrative record that they did not rely on agency documents in the record that provided some limited assessment of the effects of the rule on water quality." Fox Decl. ¶ 12.

The Court should accept the Agencies' recognition of critical errors in the NWPR and should treat the Agencies' failure to dispute the other errors alleged by the Navajo Nation as effectively conceding the validity of the Navajo Nation's arguments against the Rule. Accordingly, the Court should grant the Navajo Nation's motion for summary judgment for any one or all of the reasons stated in the Navajo Nation's brief, Br. in Supp. of Mot. for Summ. J. at 41-59, and hold

the NWPR unlawful under 5 U.S.C. § 706(2)(A) of the APA. Once it finds the NWPR unlawful, the Court should follow the usual practice for unlawful agency action and vacate the NWPR. As discussed above in Section I, all the criteria supporting vacatur are satisfied here.

## CONCLUSION

The Navajo Nation does not oppose the Agencies' request to remand the NWPR, but respectfully requests the Court to also vacate the Rule due to the damage it is causing to the Navajo Nation.

Dated: July 2, 2021

Respectfully submitted,

JILL GRANT & ASSOCIATES, LLC

/s/ Jill Elise Grant
Jill Elise Grant, N.M. Bar No. 7571
Ian Paul Fisher,* D.C. Bar No. 1672524

1319 F Street NW, Suite 300
Washington, D.C. 20004
Telephone: (202) 821-1950
Email: jgrant@jillgrantlaw.com
Email: ifisher@jillgrantlaw.com

* D.N.M.LR-Civ. 83.3(a) certification

*Attorneys for Plaintiff Navajo Nation*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 2, 2021, I caused the following to be filed and served upon counsel of record via the Court's CM/ECF filing system:

1. PLAINTIFF NAVAJO NATION'S PARTIAL OPPOSITION TO ECF NO. 32, DEFENDANTS' OPPOSED MOTION FOR VOLUNTARY REMAND OF THE NWPR WITHOUT VACATUR
2. DECLARATION OF RONNIE BEN, EXHIBITS 1 and 2

<u>/s/ Jill Elise Grant</u>